UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**VERONICA CASOLARE**

                    Plaintiff,

          v.                                                    5:00-CV-1500 (HGM/GJD)

**COUNTY OF ONONDAGA, ONONDAGA COUNTY
SHERIFF'S DEPARTMENT AND SHERIFF KEVIN
WALSH, SARGENT BENJAMIN O'DELL, CAPTAIN
LAURENCE ALBANESE, CAPTAIN THOMAS
GALKA**, in their official and individual capacities

                    Defendants.
_____

**APPEARANCES:**                          **OF COUNSEL:**

*For Plaintiff*:

MACKENZIE, HUGHES LLP                ARTHUR W. WENDTLANDT, ESQ.
101 South Salina Street
Suite 600
Syracuse, New York 13221-4967

*For Defendants County of Onondaga,*
*Onondaga County Sheriff's Department,*
*Sheriff Kevin Walsh,*
*Captain Laurence Albanese*
*and Captain Thomas Galka*:

ONONDAGA COUNTY ATTORNEY'S OFFICE  KATHLEEN M. DOUGHERTY, ESQ.
John H. Mulroy Civic Center
421 Montgomery Street
10th Floor
Syracuse, New York 13202

*For Defendant Benjamin O'Dell*:

JAMES H. MEDCRAF, ESQ.
614 James Street
Suite 100
Syracuse, NY 13202

**HOWARD G. MUNSON**
**Senior United States District Judge**

**MEMORANDUM - DECISION AND ORDER**

**INTRODUCTION**

Plaintiff, Veronica Casolare, filed a complaint claiming gender-based discrimination and harassment as well as retaliation. Plaintiff worked for the Onondaga County Sheriff's Department as a Deputy Sheriff at the Onondaga County Justice Center ("Justice Center"). Plaintiff claims that her supervisors subjected her to pervasive and severe sexual harassment, which created a hostile work environment, and retaliated against her after she had brought the harassment to her supervisors' attention and filed related claims. Plaintiff filed suit against Defendants, the County of Onondaga, New York ("the County), the Onondaga County Sheriff's Department ("Sheriff's Department"), Onondaga County Sheriff Kevin Walsh, and Captains Laurence Albanese and Thomas Galka, in their official and individual capacities ("Moving Defendants"), who deny Plaintiff's claims and move for summary judgment[1] pursuant to Rule 56 of the Federal Rules of Civil Procedure as well as Sergeant Benjamin O'Dell[2] in his official and individual capacity. For the following reasons, the Court DENIES the Moving Defendants' motion for summary judgment with respect to Plaintiff's hostile work environment claims and GRANTS the Moving Defendants' motion for summary judgment with respect to Plaintiff's *quid pro quo* sexual harassment and retaliation claims and the assertion of the qualified immunity defense and GRANTS in part and DENIES in part the Moving Defendants' motion for summary judgment with respect to Plaintiff's

---

[1] The Onondaga County Attorney represents the County, the Sheriff's Department, Sheriff Walsh, and Captains Albanese and Galka, in their official and individual capacities. James H. Medcraf, Esq. represents O'Dell in his individual and official capacities. The Onondaga County Attorney has brought this summary judgment motion on behalf of the Moving Defendants.

[2] By his attorney's affidavit, O'Dell attempted to join and adopt the motion for summary judgment brought by the moving Defendants. *See* Dkt. No. 20, Medcraf Aff. Plaintiff requested that the Court reject the attempt as untimely improper under the Local Rules, which the Court "So Ordered." *See* Dkt. No. 25.

equal protection claims.

## BACKGROUND

### I.    Plaintiff's Complaint

Plaintiff brings her complaint pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a), the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983, and New York Executive Law § 290, claiming discrimination and harassment based upon her gender and retaliation.  Specifically, Plaintiff brings five causes of action, asserting that: (1) O'Dell's actions created a hostile work environment in violation of Title VII; (2) Defendants subjected her to *quid pro quo* sexual harassment whereby, as a result of her rejection of O'Dell's sexual propositions, O'Dell threatened her and Defendants denied her a promotion for which she was qualified in violation of Title VII; (3) Defendants retaliated against her after she complained of the harassment to her supervisors and filed sexual discrimination charges with the New York State Division of Human Rights and the Equal Employment Opportunity Commission in violation of Title VII; (4) Defendants discriminated against her, in the terms and conditions of her employment, because she is a woman in violation of the Fourteenth Amendment and 42 U.S.C. § 1983; and, (5) Defendants discriminated against her, in the terms and conditions of her employment, because of her gender in violation of New York Human Rights Law ("NYHRL"). *See* Dkt. No. 1, Compl. at ¶¶ 34-55.

To allay the alleged discrimination, harassment and resulting emotional and mental stress, Plaintiff seeks: (1) an award of damages in an amount not less than $1,000,000 for lost wages, benefits, and promotional opportunities, including an award of front pay compensating plaintiff for loss of future salary and benefits; (2) an award of damages in an amount not less than $1,000,000 for mental anguish, humiliation, embarrassment, and emotional injury; (3) an order enjoining defendants from engaging in sexual discrimination, sexual harassment and retaliation; and, (4) an

3

award of reasonable attorney's fees and the costs of her action.  *See* Dkt. No. 1, Compl.

## II.    Facts

Onondaga County is a municipal corporation duly incorporated pursuant to the laws of the State of New York.  The Onondaga County Sheriff's Department is a municipal department of Onondaga County.  Dkt. No. 19, Defs.' Statement of Material Facts at ¶ 1.  Sheriff Walsh is the duly elected Sheriff of the County and is the head of the Sheriff's Department.  Id. at ¶ 2.  Captains Albanese and Galka are both members of the Sheriff's Department's Custody Division.  Dkt. No. 19, Defs.' Statement of Material Facts at ¶ 3.  O'Dell is a former Sergeant of the Sheriff's Department's Custody Division.  Id. at ¶ 4.  The County has employed Plaintiff since approximately August 29, 1994, as a Deputy Sheriff at the Public Safety Building and at the Justice Center within the Custody Division.  Plaintiff was employed on a probationary basis until October 26, 1995, at which time she became a permanent employee.  Id. at ¶ 6.  At the time of the filing of this motion, Plaintiff was employed full-time as a Deputy Sheriff in the Custody Division at the Justice Center. Id. at ¶ 7.

The parties dispute whether the County has written policies and procedures outlining specific steps for filing a complaint for harassment and discrimination.  The parties also dispute whether the County Employee Handbook contains the policy prohibiting sexual, racial and national origin harassment, defining such harassment and inviting aggrieved employees to utilize the Discrimination Grievance Procedure.  The parties additionally dispute whether the County has Procedures for Processing Employee Harassment and Discrimination Complaints.  Similarly, the parties dispute whether County's Executive Orders affirming its support and commitment to barring discrimination from the workplace dated July 28, 1994, and updated on March 5, 2001, were applicable to the Sheriff's Department.  *Compare* Id. at ¶¶ 8-11 *with* Dkt. No. 22, Pl.'s Statement of Material Facts at ¶¶ 7-10.  The disputes, however, are born of discovery, which the Court addresses below.

The Sheriff's Department Policy Directive with an effective date of October 31, 1995, and updated on August 11, 1998, sets forth policy prohibiting harassment and discrimination, including sexual harassment in the workplace, defines the prohibited conduct and provides the procedures for resolving incidents of harassment and discrimination. Dkt. No. 19, Defs.' Statement of Material Facts at ¶ 12. Plaintiff adds, however, that the Policy Directive was not in effect during the first six-and-a-half months she worked at the Justice Center and during which time O'Dell allegedly harassed her. Dkt. No. 22, Pl.'s Statement of Material Facts at ¶ 11. Plaintiff received sexual harassment training while at the police academy in 1994 as well as "refresher" training sessions. Dkt. No. 19, Defs.' Statement of Material Facts at ¶ 13. The parties dispute whether Plaintiff availed herself of the process to file a complaint of harassment or discrimination on her own behalf. Plaintiff contends that she complained about O'Dell's alleged harassment to Sergeants Ligoci and Cogan. *Compare* id. at ¶ 14 *with* Dkt. No. 22, Pl.'s Statement of Material Facts at ¶ 13.

The Sheriff's Department suspended O'Dell from work on or about November 1, 1996, based upon complaints of sexual harassment by another Justice Center female employee. During the course of the subsequent investigation by the Sheriff Department's Professional Standards Unit, Plaintiff provided information regarding her own complaints of sexual harassment by O'Dell. Dkt. No. 19, Defs.' Statement of Material Facts at ¶ 15. Plaintiff contends that O'Dell began to harass her because of her gender on or about April 1995 and that such harassment continued until the time of O'Dell's suspension. O'Dell's alleged harassment consisted of sexually explicit and/or derogatory comments made in front of Plaintiff and/or her co-workers and other supervisors "on a virtually daily basis." Dkt. No. 22, Pl.'s Statement of Material Facts at ¶ 27(k). Plaintiff submits numerous examples of O'Dell's alleged harassment, including: (1) O'Dell commented to Plaintiff in front of other deputies and supervisors, "so, I hear you're doing Geruso"; (2) O'Dell asked Plaintiff if she had seen his girlfriend at a party. When Plaintiff said "no," O'Dell responded that

his girlfriend was black and the black girls were better sexually than white girls; (3)  while Plaintiff

bent over to get a folder out of a cabinet at work, O'Dell referred to security cameras and said to her,

"on camera it looks like you're giving me a blow job"; (4) O'Dell told Plaintiff on three occasions,

at least once in front of co-workers, Dkt. No.21, Defs.' Ex. G., that "as long as I have a face, you

have a place to sit"; (5) O'Dell told Plaintiff, "I had a dream about you and you would do anything

I wanted, anything."  Plaintiff responded that "it was a dream," and O'Dell countered that she was

"such a tight ass"; (6) O'Dell sexually propositioned Plaintiff on numerous occasions, and when she

replied that he had a wife and girlfriend, he said he would give them up for her; (7) O'Dell made a

hand gesture suggesting that they have sexual intercourse; (8) O'Dell referred to Plaintiff as a dumb

blonde, a stupid blonde or an "artificial blonde with artificial intelligence"; (9) in Plaintiff's

presence, O'Dell told several male supervisors and deputies that he had better sex with his girlfriend,

who was a nurse at the jail, when she removed her teeth; (10) O'Dell made an unspecified sexually

derogatory comment about Plaintiff while they were both in the presence of Sergeant Randolph; and

(11) O'Dell threatened that "he could do anything with her, put her anywhere he wanted to,

including where she didn't want to go," and by telling Plaintiff and Deputy Spaulding that "they

didn't realize how strong he was and [how] many friends he had and how powerful he was."  Dkt.

No. 22, Pl.'s Statement of Material Facts at ¶ 27(a)-(j), (l).

Following Plaintiff's complaint against O'Dell, Plaintiff was immediately transferred from

"C" Watch to "A" Watch in order to avoid contact with O'Dell and was directed to bypass the

standard chain of command and report any other complaints or concerns directly to Deputy Chief

Wall.  Dkt. No. 19, Defs.' Statement of Material Facts at ¶ 16.  On May 17, 1997, the Sheriff's

Department served O'Dell with disciplinary charges based upon allegations that he sexually

harassed Plaintiff and two other females.  Following a due process hearing, the Sheriff's Department

terminated O'Dell's employment effective September 8, 1997.  Dkt. No. 19, Defs.' Statement of

Material Facts at ¶ 17.  On or about April 28, 1997, Plaintiff filed a Charge of Discrimination with the New York State Division of Human Rights against the Sheriff's Department and O'Dell alleging that the Sheriff's Department engaged in an "unlawful discriminatory practice relating to Employment, because of Sex."  Dkt. No. 21, Ex. J.  The Division of Human Rights dismissed Plaintiff's complaint on the basis of administrative convenience.   Dkt. No. 19, Defs.' Statement of Material Facts at ¶ 18.

The Moving Defendants seek summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  In support of their motion, they contend: (1) that although O'Dell's behavior was admittedly obnoxious, such behavior did not create a hostile work environment; (2) Plaintiff's claims fail to establish a cause of action for either *quid pro quo* sexual harassment or retaliation; and, (3) that the individually named County Defendants are entitled to qualified immunity.[3]  *See generally* Dkt. No. 18, Defs.' Mem. of Law.

## DISCUSSION

### I.    Discovery

As an initial matter, the Court addresses a discovery issue having some bearing on its consideration of the instant motion.  On August 16, 2001, Plaintiff submitted her first demand for the production of documents, requesting, *inter alia*, that Defendants produce "the sexual harassment policy in effect for the County of Onondaga and/or the Onondaga County Sheriff's Department during the years 1994 through 1997."  *See* Dkt. No. 23, Ex. D at ¶ 3.  In response to Plaintiff's demand, Defendants produced the following: the Onondaga Sheriff's Department Custody Division Policy Directive of October 31, 1995, and an Onondaga County Sheriff's Office Written Directive of August 11, 1998, which updated the prior directive.  *See* Dkt. No. 23, Ex. E at ¶ 3, F and G.

---

[3]The County Attorney does not include O'Dell among those whom it asserts are entitled to qualified immunity.

Plaintiff alleges that Defendants never supplemented their response to her demand to produce the sexual harassment policy in effect in Onondaga County and/or the Sheriff's Department.

In their motion for summary judgment, however, Defendants refer not only to the two above referenced policies, but also to the Onondaga County Employees Handbook, a County of Onondaga Procedures for Processing Employee Harassment & Discrimination Complaints, and an Executive Order Regarding Sexual, Racial, National and General Harassment in the Workplace, which Defendants submitted as exhibits. *See* Dkt. Nos. 19 and 21. Plaintiff asserts that Defendants failed to produce these additional sexual harassment policies during discovery. Defendants' counsel represents in her affidavit that all exhibits submitted in support of Defendants' motion for summary judgment are "true and accurate copies of documents which were exchanged and/or disclosed in the course of pretrial discovery." Dkt. No. 17, Dougherty Aff. at ¶ 4. At oral argument, however, she candidly acknowledged that while she produced what she had available to her during discovery, she subsequently uncovered additional County sexual harassment policy materials and did not update her discovery to include the policies in question because "it would have been far after discovery was closed." Dkt. No. 27, Tr. at 16-17.

It is clear that the additional sexual harassment policies were in effect between 1994 and 1997, but without the additional policies, Plaintiff would not have been able to examine Defendants regarding those policies. Plaintiff, therefore requests that the Court disregard those policies in its consideration of the instant motion.[4] Consequently, for purposes of this summary judgment motion, the Court will not consider the three additional policies with the expectation that should Plaintiff bring a motion *in limine*, as she has indicated she will do, to preclude Defendants from introducing these policies at trial, both parties will have an opportunity to more fully address the matter.

---

[4]Plaintiff notes her intention to make a motion *in limine* to preclude Defendants from using these policies at trial.

**II.      Summary Judgment Standard**

The standard for summary judgment is familiar and well-settled.  Rule 56 allows for summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1991) (quoting FED.R.CIV.P. 1).  A court may grant a motion for summary judgment when the moving party carries its burden of showing that no triable issues of fact exist.  *See* Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir.1990).  In light of this burden, any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party.  *See* id.; United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L. Ed. 2d 176 (1962) (per curiam).  If the moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).  The role of the court on a motion for summary judgment is not to try issues of fact but only to determine whether there are issues of fact to be tried. *See*, *e.g.*, Anderson, 477 U.S. at 255, 106 S.Ct. at 2513; Gallo v. Prudential Residential Services, Limited Partnership, 22 F.3d 1219, 1223-24 (2d Cir.1994); Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 58 (2d Cir.1987).  The drawing of inferences and the assessment of the credibility of the witnesses remain within the province of the finders of fact.  To defeat a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L. Ed. 2d 538 (1986).  A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving

party." <u>Anderson</u>, 477 U.S. at 248, 106 S. Ct. at 2510.   When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper.   *See* <u>Anderson</u>, 477 U.S. at 250-251, 106 S.Ct. at 2511.

**III.    Plaintiff's Title VII and NYHRL Claims**[5]

In her first cause of action, Plaintiff asserts that O'Dell subjected her to a continuous barrage of sexually derogatory and demeaning statements on a virtually daily basis. *See* Dkt. No. 1, Compl. at ¶ 35.   Title VII provides, in relevant part, that "[i]t shall be unlawful for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's . . . sex . . . ."   42 U.S.C. § 2000e-2(a)(1).   Before proceeding further, the Court notes that it is well-settled that Congress did not intend to hold individuals liable in their individual capacity under Title VII.[6]   *See* <u>Tomka</u>, 66 F.3d at 1313-17. Therefore, Plaintiff's claims against Sheriff Walsh, Captains Albanese and Galka, and former Sergeant O'Dell in their individual capacities, pursuant to Title VII are dismissed with prejudice. Plaintiff's NYHRL claims against Sheriff Walsh, Captains Albanese and Galka and former Sergeant O'Dell in their personal capacities are left undisturbed.

Under Title VII, courts have traditionally recognized two forms of sexual harassment: "hostile work environment" harassment and "*quid pro quo*" harassment. *See, e.g.*, <u>Leibovitz v. New York City Transit Auth.</u>, 252 F.3d 179, 188 (2d Cir. 2001).   Although Title VII does not include the

---

[5]New York courts require the same standard of proof for claims brought under the NYHRL as those brought under Title VII; therefore, claims under the NYHRL and under Title VII are essentially identical. *See* <u>Tomka v. Seiler</u>, 66 F.3d 1295, 1304 n.4 (2d Cir. 1995) (citing <u>Miller Brewing Co. v. State Div. of Human Rights</u>, 66 N.Y.2d 937, 498 N.Y.S.2d 776, 489 N.E.2d 745 (1985))); *see also* <u>Stetson v. NYNEX Serv. Co.</u>, 995 F.2d 355, 360 (2d Cir. 1993) (Plaintiff's claim under NYHRL "is governed by the same standards as his federal claim").   By examining the applicable standard for Title VII claims, the Court coincidentally addresses Plaintiff's NYHRL claims.

[6]New York law differs from federal law, however, in one significant respect: New York allows for liability of individual defendants on the basis of a hostile work environment claim.   The Second Circuit has concluded that "a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable" under the NYSHRL. <u>Tomka</u>, 66 F.3d at 1313.

terms "*quid pro quo*" and "hostile work environment" within its text, they are useful to distinguish between "'cases involving a threat which is carried out and offensive conduct in general.'" Mormol v. Costco Wholesale Corp., 364 F.3d 54, 57 (2d Cir. 2004) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

A.    Hostile Work Environment

Title VII encompasses the entire spectrum of "disparate treatment . . . , which includes requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). A hostile work environment is one in which "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Id.

> [H]arms suffered in the workplace are cognizable under Title VII, even when they are not the result of "tangible employment actions," if they arise from conduct (1) that is "objectively" severe or pervasive–that is, if it creates "an environment that a reasonable person would find hostile or abusive" [the "objective" requirement], (2) that the plaintiff "subjectively perceives" as hostile or abusive [the "subjective" requirement], and (3) that creates such an environment because of plaintiff's sex (or other characteristic protected by Title VII) [the "prohibited causal factor" requirement].

Gregory v. Daly, 243 F.3d 687, 692 (2d Cir. 2001) (internal citations omitted). Determining whether the workplace is permeated with discriminatory intimidation that is severe or pervasive so as to alter the conditions of the victim's employment requires an evaluation of all the circumstances, which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." Harris, 510 U.S. at 23, 114 S.Ct. at 371. It is important to note, however, that Title VII is not "a general civility code," Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), and "[s]imple teasing, offhand

comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." Petrosino v. Bell Atlantic, 385 F.3d 210, 223 (2d Cir. 2004). As to the frequency, "[t]here is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment." Alfano v. Costello, 294 F.3d 365, 379 (2d Cir. 2002). The alleged incidents "must be more than episodic; they must be sufficiently continuous and concerted in order to be pervasive." Carrero v. New York City Housing Auth., 890 F.2d 569, 577 (2d Cir. 1989); Tomka, 66 F.3d at 1305 n.5 (citations omitted) ("[T]he incidents must occur in concert or with a regularity that can reasonably be termed pervasive."); Kotcher v. Rosa and Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62 (2d Cir. 1992) ("The incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief."). Additionally, the employee must subjectively perceive the environment to be hostile, and the environment must be one that a reasonable person would find hostile or abusive. Torres v. Pisano, 116 F.3d 625, 632 (2d Cir. 1997). Finally, "[t]he effect [of the harassment] on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required." Harris, 510 U.S. at 23, 114 S.Ct. at 371. Although actionable harassment is not confined to sexual advances or other explicitly sexual conduct, "the plaintiff is required to establish that the harassment complained of was based on her gender." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998) (citations omitted).

The Court finds O'Dell's remarks rather crude and obnoxious–a point that Defendants willingly concede, Dkt. No. 18, Defs.' Mem. of Law at 5–and examining the evidence in the light most favorable to Plaintiff, the Court cannot say, as a matter of law, that no reasonable jury would find that a hostile work environment existed. There can be little doubt that O'Dell's comments were based upon Plaintiff's gender. The instances of harassment articulated by Plaintiff are more than

single, isolated examples of verbal abuse.  Not only did Plaintiff allege at least thirteen specific incidents with sexually charged remarks and/or incidents over the course of an approximately nineteen month period, but she also asserted that O'Dell's harassment of her occurred, "on a virtually daily basis."  While the alleged offensive language and sexual gestures were not accompanied by any allegations of physical harm, a plaintiff need not endure threats of physical harm to sustain a hostile work environment claim.  *See* Richardson, 180 F.3d at 440.  The Court also notes, however, that despite Plaintiff's apparent indignation with O'Dell's behavior, she managed to go out for coffee at a local restaurant with colleagues, including O'Dell, as often as they could up until October 16, 1996, when she filed charges against him.  Dkt. No. 21, Ex. Q, Casolare Dep. at 176-79.

Although a close issue, in view of all the circumstances, the Court finds that Plaintiff's hostile work environment claims are sufficient to withstand summary judgment.  Were a reasonable jury to credit Plaintiff's version of the case, it could find that O'Dell crossed the admittedly indistinct line between "boorish and inappropriate" behavior and actionable sexual harassment. Holtz v. Rockefeller & Co., Inc., 258 F.3d 62 (2d Cir. 2001); *compare* Alfano, 294 F.3d at 378-380 (collecting cases and finding that five incidents, three of which amounted to different iterations of a single sexual prank, over a four-year period, were too few, too separate in time and too mild to sustain a hostile work environment claim); Quinn, 159 F.3d 768 (finding an appreciative comment about the plaintiff's buttocks and a deliberate touching of her breasts insufficient as a matter of law to alter the terms and conditions of employment); *and* Moore v. Transitional Servs., Inc., 1998 WL 71824 at *4 (E.D.N.Y. 1998) (finding that a reference to plaintiff as a "fat bitch" and the act of slamming a door in her face  fell "well short of demonstrating the sort of pervasive, severe conduct that would alter the conditions of her employment and give rise to a claim of hostile workplace sexual harassment") *with* Holtz, 258 F.3d 62, 75-76 (2d Cir. 2001) (finding a triable issue where

during more than one year of employment, the plaintiff's harasser touched her hand on a "daily basis," made "obscene leers at her," "tried to peer down her blouse and up her skirt," and made "approximately ten or twenty" insinuating remarks about her sex life); <u>Daly</u>, 243 F.3d at 692-93 (holding that allegations that male supervisor made demeaning comments about women, made sexually demeaning statements, initiated unwelcome physical conduct of a sexual nature, intimidated plaintiff by standing "uncomfortably close," and made references to women as easy victims of sexual assault stated a claim for hostile work environment sexual harassment under Title VII); <u>Raniola v. Bratton</u>, 243 F.3d 610, 621 (2d Cir. 2001) (finding a triable issue where plaintiff demonstrated that in two and a half years, she was subjected to offensive sex-based remarks, disproportionately burdensome work assignments, workplace sabotage and one serious threat of physical harm); <u>Howley v. Stratford</u>, 217 F.3d 141 (2d Cir. 2000) (reversing summary judgment where harasser launched a single lengthy and humiliating tirade in which the plaintiff was the only female present and many of the men were her subordinates); <u>Schwapp v. Town of Avon</u>, 118 F.3d 106 (2d Cir. 1997) (holding that the plaintiff had created a triable issue based on ten to twelve instances of explicitly racist conduct in twenty months, where most of the incidents involved racial jokes and epithets that insulted blacks, Puerto Ricans, and people of Middle Eastern origin); and <u>Pisano</u>, 116 F.3d at 628-33 (finding the existence of a hostile work environment where plaintiff's supervisor "repeatedly referred to her as a 'dumb cunt,' suggested that she was in the habit of performing oral sex for money, ridiculed her pregnancy, commented on her anatomy and his desire to have sex with her, and allowed friends of his who visited him at the office to make crude sexual remarks about her").

Plaintiff must also show that "a specific basis exists for imputing the conduct that created the hostile environment to the employer." <u>Perry v. Ethan Allen, Inc.</u>, 115 F.3d 143, 149 (2d Cir.1997). The Supreme Court has held that an employer is presumed absolutely liable in cases

14

where the harassment is perpetrated by a supervisor with immediate or successively higher authority over the victim, although employers may interpose an affirmative defense to rebut that presumption.

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, *see* FED.R.CIV.PROC. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Burlington, 524 U.S. at 765, 118 S.Ct. at 2270. When the source of the alleged harassment is a co-worker, the plaintiff must demonstrate that the employer "'failed to provide a reasonable avenue for complaint or if it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.'" Richardson v. New York State Department of Correctional Service, 180 F.3d at 441 (quoting Kracunas v. Iona College, 119 F.3d 80, 89 (2d Cir.1997)).

The parties dispute whether O'Dell was in fact Plaintiff's supervisor. The Moving Defendants concede that because O'Dell held the rank of sergeant, he was a superior officer to Plaintiff, but they submit that he was not Plaintiff's direct supervisor. Dkt. No. 18, Defs.' Mem. of Law at 7. Plaintiff directs the Court's attention to Sheriff Walsh's charges against O'Dell, which state that "while assigned as a Supervisor at the Justice Center you made inappropriate, unprofessional and harassing remarks to a female *subordinate*." Dkt. No. 21, Defs.' Ex. I (emphasis added). The language in the charge strongly suggests that O'Dell was Plaintiff's supervisor in some capacity, and the Court will proceed accordingly.

The Moving Defendants assert the Burlington affirmative defense arguing that they took reasonable care to prevent and promptly correct any harassment by O'Dell. Defendants submit that they immediately responded to Plaintiff's formal complaint and granted her request to be transferred to "A" Watch the same day. The municipal Defendants immediately suspended O'Dell, and

following a due process hearing, terminated his employment.  In addition, Plaintiff was advised that she would report any other work-related concerns directly to Deputy Chief Wall, thus bypassing the ordinary chain of command.  The Moving Defendants also point to their anti-sexual harassment policy.  Dkt. No. 18, Defs.' Mem. of Law at 7.  Plaintiff counters that the Moving Defendants did not exercise reasonable care to prevent and rectify the alleged harassment.  Plaintiff argues that she had reasonable fear of reporting the harassment during the probationary period of her employment, and that when she did complain of the harassment, her complaints fell upon deaf ears.  Dkt. No. 24, Pl.'s Mem. of Law at 16.

"The existence of an anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has satisfied the first prong of this defense." Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 295 (2d Cir. 1999).  Here, Defendants apparently had an anti-sexual harassment policy in place while employing Plaintiff, but as noted above, the Moving Defendants failed to produce certain materials relating to that policy during discovery, and the Court has excluded them for purposes of the instant motion.  The Moving Defendants, however, produced part of the policy during discovery–"Onondaga County Sheriff's Department Custody Division Policy Directive, Topic: Harassment, effective October 31, 1995," accompanied by an update dated August 11, 1998 (the "Policy")–which the Court will here examine. See Dkt. No. 21, Defs.' Ex. E.  The Policy states:

> Any staff member who believes the action or words of a supervisor or fellow staff member constitute unwelcome harassment has a responsibility to report such actions as soon as possible to a supervisor or the next line of management not involved in the harassment.  If the staff member is not satisfied with the handling of a complaint or the action taken by the supervisor, the staff member should notify the next line of management.

Dkt. No. 21, Defs.' Ex. E.  The Policy only became effective some six months after Plaintiff began working at the Justice Center in April 1995, when O'Dell commenced his harassment.  Thus, for

purposes of this motion, there was no policy in effect during Plaintiff's first six months working at the Justice Center.  The absence of a sexual harassment policy tends to negate Defendants' assertion of the Burlington affirmative defense. *Cf.* Burlington, 524 U.S. at 765, 118 S.Ct. at 2270 (explaining that the "need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense").

With respect to the remaining approximately thirteen months during which both Plaintiff and O'Dell were employed at the Justice Center, the Moving Defendants contend that Plaintiff did not follow the Policy because she failed to report her allegations "to the next line of management not involved in the harassment."  Plaintiff counters that she had a reasonable fear of reporting the harassment during her probationary period of employment and that when she came first forward with the allegations of sexual harassment, her supervisors took no action.

Plaintiff offers little in the way of proof that the Municipal Defendants have ever taken any adverse employment actions, such as firing or demotion, against an employee who has brought allegations of sexual harassment to their attention.  Plaintiff's reasons for not immediately reporting the harassment in accordance with the Policy founder in speculation.  *Cf.* Caridad, 191 F.3d at 295 (explaining that the plaintiff's reasons for failing to report the harassment were "not based on a credible fear that her complaint would not be taken seriously or that she would suffer some adverse employment action as a result of filing a complaint").  Plaintiff argues, however, that she reported the harassment to two supervisors, Sergeants Cogan and Ligoci.

"[U]nder Title VII an employer has notice of sexual harassment committed by coworkers 'where the employer (or its agents or supervisory employees)' knew 'or should have known of the conduct.'"  Murray v. New York Univ. College of Dentistry, 57 F.3d 243, 249 (2d Cir. 1995) (quoting 29 C.F.R. § 1604.11(d)).  Plaintiff asserts that in accordance with the Policy, in and about November 1995, she reported O'Dell's harassment to Cogan several times, but that in response he

stated "don't tell me, I don't want to know.  Don't write it, don't nothing."   Dkt. No. 21, Defs.' Ex. Q, Casolare Dep. at 41; Ex G. at 9-10.  Similarly, Plaintiff complained to Ligoci about O'Dell's harassment, and he told her to "talk to some higher authority about [O'Dell]."  Dkt. No. 23, Pl.'s Ex. I, Ligoci Dep. at 17.  Plaintiff asserts that Cogan's and Ligoci's *laissez faire* responses are wholly inconsistent with the Policy.  Inasmuch as the Moving Defendants do not address Plaintiff's complaints to Cogan and Ligoci but rather state that "other officers," as opposed to supervisors, repeatedly advised Plaintiff to formally complain about O'Dell's alleged sexual harassment, *see* Dkt. No. 18, Defs.' Mem. of Law at 9, the Court infers that they apparently dispute her conclusion that she reported the harassment to two supervisors.

The Court finds that the Moving Defendants have not met their burden in asserting the Burlington affirmative defense, because of the absence, for purpose of this motion, of a sexual harassment policy.  To the extent that the Moving Defendants had a sexual harassment policy in effect from October 31, 1995 forward, an issue of fact remains with respect to whether Plaintiff reported the alleged harassment to a supervisor, *i.e.*, Sergeants Cogan or Ligoci, or the next line of management not involved in the harassment, and if she did, whether the Moving Defendants exercised reasonable care to promptly prevent and correct the sexual harassment.  The Moving Defendants' motion for summary judgment with respect to Plaintiff's first cause of action for Title VII Hostile Work Environment is DENIED.

### B.    Quid Pro Quo *Sexual Harassment*

In her second cause of action, Plaintiff contends that she was the victim of *quid pro quo* sexual harassment.  Plaintiff claims that she was subjected to unwelcome sexual advances by O'Dell and that because she did not submit to O'Dell's advances, he threatened her and Defendants denied her a transfer to the Booking Unit in favor of another female deputy.  *See* Dkt. No. 1, Compl. at ¶¶ 40-41.  *Quid pro quo* harassment occurs when "submission to or rejection of [unwelcome sexual]

conduct by an individual is used as the basis for employment decisions affecting such individual."

Karibian v. Columbia Univ., 14 F.3d 773, 777 (2d Cir. 1994) (quoting 29 C.F.R. § 1604.11(a)(2)

(1993)).  A *quid pro quo* violation of Title VII is caused by explicit discriminatory alterations in the

terms or conditions of a plaintiff's employment. Jin v. Metro. Life Ins. Co., 310 F.3d 84, 91 (2d Cir.

2002).  Such explicit alterations are established when a plaintiff proves that an action, such as a

firing or demotion, resulted from a refusal to submit to a supervisor's sexual demands, or that "an

employer demanded sexual favors from an employee in return for a job benefit."  Id. (quoting

Burlington, 524 U.S. at 752, 118 S.Ct. at 2264).  "Because the *quid pro quo* harasser, by definition,

wields the employer's authority to alter the terms and conditions of employment–either actually or

apparently–the law imposes strict liability on the employer for *quid pro quo* harassment." Karibian,

14 F.3d at 777 (citation omitted).  If a harasser's threats are never carried out, *i.e.*, no tangible

employment action[7] is taken, then a plaintiff may only claim a hostile work environment and not

*quid pro quo* harassment.  *See* King v. Friend of a Farmer Corp., 2001 WL 849460, at *3 (S.D.N.Y.

July 26, 2001).

Plaintiff baldly asserts that the Moving Defendants denied her a transfer to the Booking Unit

because O'Dell recommended another female deputy.  First, Plaintiff has provided no evidence that

the Moving Defendants' failure to transfer her to the Booking Unit constitutes a tangible

employment action.  The Moving Defendants did not fire or demote Plaintiff or reassign her to a

position with significantly different responsibilities, benefits or pay.  Second, assuming *arguendo*

that the Moving Defendants' denial of Plaintiff's requested transfer constitutes a tangible

employment action, the Moving Defendants have proffered legitimate reasons for the alleged tainted

---

[7]"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits . . . A tangible employment action in most cases inflicts direct economic harm."  Burlington, 524 U.S. at 761-62, 118 S.Ct. at 2268-69.  A disappointed or bruised ego, however, will not suffice.  *See* Flaherty v. Gas Research Inst., 31 F.3d 451, 456-57 (7th Cir. 1994).

denial of transfer.  The Moving Defendants point out that a transfer to the Booking Unit was part

of a "bid sheet" procedure that occurred every November.  The procedure provides staff members

with the opportunity to bid for their shift and work assignment based on a rating comprised of their

years of experience in the Sheriff's Department, skill-level, ability and performance in an interview

conducted by Lieutenant Waters, the Booking Unit Commander.  *See* Dkt. No. 21, Defs.' Ex. P,

Galka Dep. at 13-14.  At his deposition, Galka also testified that he knew of no instance in which

Plaintiff was "passed over on the rating list so that another deputy received the position in booking

and she did not[.]"  Dkt. No. 21, Defs.' Ex. P, Galka Dep. at 15.  Plaintiff has not come forward with

evidence sufficient to suggest that she suffered an adverse employment action affecting the terms

conditions and/or privileges of her employment, *see* Mormol v. Costco Wholesale Corp., 364 F.3d

54, 57-58 (2d Cir. 2004) (concluding that the plaintiff did not suffer a significant change in

employment status even where the plaintiff alleged that she was called back early from her

scheduled unpaid vacation, that her working hours were reduced during one week from a seven-day

work schedule, and that she was given a disciplinary notice, ostensibly for being five minutes late

in returning from a break), nor has she set forth any facts suggesting a causal connection between

O'Dell's harassment and the denial of her transfer request, *see* Carter v. New York, 310 F.Supp.2d

468, 478 (N.D.N.Y. 2004).  The Moving Defendants' motion for summary judgment with respect

to Plaintiff's second cause of action for Title VII *quid pro quo* harassment is GRANTED.

C.     *Retaliation*

In her third cause of action, Plaintiff contends that Defendants retaliated against her with

respect to the terms and conditions of her employment.  *See* Dkt. No. 1, Compl. at ¶¶ 43-46.  Courts

apply a three-step burden shifting analysis to retaliation claims under Title VII.  *See*, *e.g.*, Reed v.

A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996) (citing McDonnell Douglas Corp. v.

Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668 (1973)).  First, the plaintiff

must make out a prima facie case of retaliation.  *See* <u>Tomka</u>, 66 F.3d at 1308.  Second, the defendant then has the burden of articulating a legitimate, non-retaliatory reason for the complained of action. *See* <u>id.</u>; *see also* <u>Gallo v. Prudential Residential Services, L.P.</u>, 22 F.3d 1219, 1226 (2d Cir.1994) ("Once a plaintiff demonstrates a prima facie case . . . , the defendant is obligated to produce evidence 'which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action.'") (quoting <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. at 509, 113 S.Ct. 2742 (emphasis in original)).  Third, if the defendant meets its burden, then the plaintiff must adduce evidence "sufficient to raise a fact issue as to whether [the employer]'s reason was merely a pretext" for retaliation.  *See* <u>Tomka</u>, 66 F.3d at 1309.  To establish a prima facie case of retaliation, an employee must show "(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  <u>Tomka</u>, 66 F.3d at 1308.

As to the first element of retaliation, there is no dispute that Plaintiff complained to Sergeant Smith of the Sheriff Department's Professional Standards unit regarding O'Dell's sexual harassment and filed a sexual discrimination charge with the New York State Division of Human Rights and the Equal Opportunity Employment Commission, *see* Dkt. No. 18, Defs.' Mem. of Law at 10; Dkt. No. 1, Compl. at ¶ 45, and Plaintiff thereby satisfies the first element.  The parties dispute the second element.  Plaintiff contends that the denial of her requests to transfer from "A-Watch" to "C-Watch," to the Booking Unit and to the "Court Liason Unit" and Galka's rescission of her lockdown order all constitute retaliation for her having reported O'Dell's sexual harassment.  *See* Dkt. No. 24, Pl.'s Mem. of Law at 21.  Conversely, the Moving Defendants maintain that Plaintiff suffered no adverse employment action.  As noted above, adverse employment actions "include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . .

unique to a particular situation.'" <u>Terry v. Ashcroft</u>, 336 F.3d 128, 138 (2d Cir. 2003) (quoting

<u>Galabya v. N.Y. City Bd. of Educ.</u>, 202 F.3d 636, 640 (2d Cir. 2000)).   Plaintiff has not

demonstrated how any of her allegations of retaliation constitute an adverse employment action.

Plaintiff was not terminated, demoted, docked pay or benefits, or assigned to a less distinguished

position.   Even if the Court were to credit Plaintiff's adverse employment action characterization,

her claim still fails.

> As to the third element, Plaintiff argues that she can establish causation through evidence

of retaliatory animus or by demonstrating that the adverse employment action followed quickly on

the heels of the protected activity.   Plaintiff theorizes that Albanese, who tabled or rejected her

transfer requests, resented being bypassed in the chain of command such that she could make

complaints directly to Deputy Chief Wall, and thus retaliated against her.   *See* Dkt. No. 24, Pl.'s

Mem. of Law at 21-22.   As explained above, Defendants have proffered a legitimate reason for the

denial of Plaintiff's request to transfer to the Booking Unit.   Aside from speculation, Plaintiff has

failed to provide any evidence demonstrating retaliatory animus as the reason for the denial of her

transfer request to the Booking Unit.

> Plaintiff also alleges that she was denied a request to transfer from "A-Watch" to "C-Watch"

in retaliation for her protected activity.   Plaintiff first requested a transfer from "A-Watch" to "C-

Watch" by memorandum addressed to Sergeant Miller dated February 25, 2000. Dkt. No. 21, Defs.'

Ex A.   By memorandum addressed to Sergeant Kruth dated May 30, 2000, however, Plaintiff

*voluntarily withdrew* her request.   <u>Id.</u>; Ex. Q, Casolare Dep. at 98.   Moreover, "courts have

repeatedly held that plaintiffs relying solely on temporal proximity to show causation must

demonstrate a very close connection, typically on the order of days or weeks, not months, between

the protected activity and the alleged retaliation."   <u>Carter</u>, 310 F.Supp.2d at 478 n.5 (citing <u>Clark</u>

<u>County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (citations

omitted)).  Plaintiff's protected activity, reporting O'Dell's harassment, occurred more than three years earlier in November of 1996.  Plaintiff further contends that on May 28, 2000, Galka rescinded a lockdown order she imposed on her inmate pod as a result of an incident.  Plaintiff's protected activity, reporting O'Dell's harassment, occurred more than three years earlier in November of 1996.  Here, the temporal proximity between both the transfer request and rescission of the lockdown order is far too attenuated to sustain a claim of retaliation.  <u>Carter</u>, 310 F.Supp.2d at 478 n.5 (citation omitted). Moreover, Plaintiff's lockdown order was subject to review; as Watch Commander, Galka was fully authorized to affirm or countermand the order.  *See* Dkt. No. 21, Defs.' Ex. P, Galka Dep. at 20.

Plaintiff has established neither that she suffered an adverse employment action nor a causal connection between her protected activity and the alleged adverse employment actions.  The Moving Defendants' motion for summary judgment with respect to Plaintiff's third cause of action for Title VII retaliation is GRANTED.

## IV.       Equal Protection Under 42 U.S.C. § 1983

In her fourth cause of action, Plaintiff alleges that as a female deputy she has been treated differently in the terms and conditions of her employment versus similarly situated male Sheriff's Deputies in violation of the Equal Protection Clause of the Fourteenth Amendment.  *See* Dkt. No. 1, Compl. at ¶¶ 21, 33, 48-49.  The Moving Defendants protest that Plaintiff's fourth cause of action fails to meet the minimum pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure.

### A.       *Rule 8 of the Federal Rules of Civil Procedure*

Rule 8(a) provides, in pertinent part, that the claim must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED.R.CIV.P. 8(a)(2).  Defendants maintain that Plaintiff's complaint fails to set forth any facts to support her claim that she was denied

equal protection of the laws.  Absent from Plaintiff's pleadings are any facts with respect to the identity of the officers treated differently, when such disparate treatment occurred and/or the frequency with which it occurred.  Defendants argue that such patently conclusory allegations do not suffice under Rule 8.  *See* Dkt. No. 18, Defs.' Mem. of Law at 21.  Plaintiff counters that the specific acts of sexual harassment "which were . . . directed at the plaintiff as a female deputy . . . were not directed towards male deputies" and references all the factual allegations contained in her complaint.  *See* Dkt. No. 24, Pl.'s Mem. of Law at 22.  The Court finds that Plaintiff's fourth cause of action has met Rule 8's requirements and proceeds to her equal protection claim.

### B.   Equal Protection

The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws," U.S. CONST. amend. XIV, § 1, "which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citation omitted).

The Second Circuit has held that sex-based discrimination may be actionable under § 1983 as a violation of equal protection.  *See* Kern v. City of Rochester, 93 F.3d 38, 43 (2d Cir. 1996); Annis v. County of Westchester, 36 F.3d 251, 254 (2d Cir. 1994).  Section 1983 and the Equal Protection Clause protect public employees from various forms of discrimination, including hostile work environment and disparate treatment, on the basis of gender.  Once action under color of state law is established, Plaintiff's equal protection claim parallels her Title VII claim, except that unlike a Title VII claim, a § 1983 claim can be brought against individuals.  *See* Feingold v. New York, 366 F.3d 138, 159 & n. 20 (2d Cir. 2004).  "The elements of one are generally the same as the elements of the other and the two must stand or fall together."  Id. at 159 (citing Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998) ("In analyzing whether conduct was unlawfully

discriminatory for purposes of § 1983, we borrow the burden-shifting framework of Title VII claims.")). Therefore, the Court's Title VII analysis, *supra*, similarly applies to Plaintiff's equal protection claim[8] except that because § 1983 permits claims against defendants in their individual capacities, Plaintiff's hostile work environment claim additionally survives summary judgment as to the individual Moving Defendants in their personal capacities.   Plaintiff's equal protection/disparate treatment claim, which is also analyzed under the <u>McDonnell Douglas</u> burden-shifting framework and which relies upon the same allegations used to support Plaintiff's Title VII retaliation claim, *i.e.*, the denial of her requests to transfer from "A-Watch" to "C-Watch," and to the Booking Unit and Galka's rescission of her lockdown order, however, similarly fails.  With this in mind, the Moving Defendants' motion for summary judgment with respect to Plaintiff's fourth cause of action is GRANTED in part and DENIED in part, and the Court must now determine whether the individual Moving Defendants are shielded from liability under the doctrine of qualified immunity.

## V.    Qualified Immunity

Sheriff Walsh and Captains Albanese and Galka also move for summary judgement on the basis of qualified immunity.  Dkt. No. 18, Defs.' Mem. of Law at 15.  Plaintiff contends that they are not entitled to qualified immunity.  Plaintiff argues that Captains Albanese and Galka knew of her involvement in protected activity and hindered her professional career by failing to grant transfer requests and hindered her job performance by rescinding a lockdown order in retaliation.  *See* Dkt. No. 24, Pl.'s Mem. of Law at 22.  Plaintiff submits that "[i]f a question of fact exists as to retaliation by these officers, it must be sufficient to defeat qualified immunity."  <u>Id.</u> at 23.  Plaintiff adds that Sheriff Walsh, as the most senior official within the Sheriff's Department, created "an atmosphere

---

[8]In support of her equal protection/disparate treatment claim, Plaintiff's complaint relies upon the same allegations used to support her Title VII retaliation claim, *i.e.*, the denial of her requests to transfer from "A-Watch" to "C-Watch," and to the Booking Unit and Galka's rescission of her lockdown order.

that condoned actions and policies under which unconstitutional practices occurred or were allowed to occur."  Id.

The qualified immunity doctrine seeks to "strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority."  Jemmott v. Coughlin, 85 F.3d 61, 66 (2d Cir. 1996) (internal citations and quotations omitted).   The Supreme Court has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).  "What this means in practice is that whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."  Wilson v. Layne, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal citations and quotation marks omitted). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violated the law.'"  Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).  The Second Circuit has observed that the qualified immunity defense would be "hollow indeed" if public officials "who may in the course of carrying out their duties have continuing run-ins with those whose conduct the officials must monitor, would be forced to go to trial when the only evidence of unconstitutional motive may be a prior dispute with the plaintiff, if that."  Blue v. Koren, 72 F.3d 1075, 1084 (2d Cir. 1995).

Here, it is clear that when the alleged harassment occurred, Plaintiff had a constitutional right

26

to be free from a gender-hostile work environment, <u>Gonzalez v. N.Y. State Dep't of Corr. Servs. Fishkill Corr. Facility</u>, 122 F.Supp.2d 335, 348 (N.D.N.Y. 2000) ("[F]reedom from discrimination on account of gender . . . [is a] clearly established right[].")], and retaliation for reporting the alleged harassment.  *Cf.* <u>DiMarco v. Rome Hosp. and Murphy Hosp.</u>, 1991 WL 336000, at *4 (N.D.N.Y. July 1, 1991).   There is no evidence to suggest, however, that Sheriff Walsh's or Captains Albanese's and Galka's conduct violated these clearly established rights.  There is no evidence that they acted with gross negligence or deliberate indifference in their supervisory capacities.  *See* <u>Poe v. Leonard</u>, 282 F.3d 123, 140-41 (2d Cir. 2002); <u>Meriwether v. Coughlin</u>, 879 F.2d 1037, 1047-48 (2d Cir. 1989).   The Court concludes that Sheriff Walsh and Captains Albanese and Galka are entitled to qualified immunity and their motion is accordingly GRANTED.

**CONCLUSION**

**WHEREFORE**, after careful consideration of the file in this matter including the parties' submissions, oral argument, and the applicable law, the Court hereby

**DENIES** the Moving Defendants' motion for summary judgment with respect to Plaintiff's Title VII hostile work environment claims except as to Sheriff Walsh and Captains Albanese and Galka in their individual capacities, against whom the Court **DISMISSES** such claims with prejudice and further

**GRANTS** the Moving Defendants' motion for summary judgment with respect to Plaintiff's *quid pro quo* sexual harassment and retaliation claims and further

**GRANTS** in part and **DENIES** in part the Moving Defendants' motion for summary judgment with respect to Plaintiff's Fourteenth Amendment Equal Protection claim as described above and further

**GRANTS** the individual Moving Defendants' motion for qualified immunity and further

**DISMISSES** Plaintiff's second, third, and fifth causes of action in their entirety.

The Court further directs counsel for the parties to appear for a Pre-Trial Settlement Conference on Tuesday August 1, 2006, at 11:00 a.m. in Syracuse, New York.

**IT IS SO ORDERED.**

Dated: July 6, 2006
Syracuse, New York

Howard G. Munson
Senior  U.S. District Judge